Good morning, Your Honors, and may it please the Court, my name is Matthew Benedetto and I represent Mr. Ivan Sapp, the Plaintiff Appellant. I would like to reserve two minutes for rebuttal. That's fine. The District Court's decision dismissing my client's civil rights complaint for failure to exhaust administrative remedies under the Prison Litigation Reform Act should be reversed because prison officials at California State Prison Sacramento administered the grievance process in such a way as to effectively preclude Mr. Sapp from having a meaningful opportunity to grieve the conditions of his confinement. Because of the actions of CDC officials, administrative remedies were not available to Mr. Sapp within the meaning of the PLRA, as that phrase has been construed both by the Supreme Court and by this Court. We acknowledge that the 2006 Supreme Court decision in Woodford v. Noe established that exhaustion under the PLRA means proper exhaustion, as defined by applicable prison regulations, and that the Supreme Court held in a previous decision, Booth v. Turner, that a prisoner must exhaust administrative remedies even when the internal process cannot afford the specific relief that is requested. Now, didn't the prison authorities tell him that he was maybe using the wrong forms and that he ought to fill out these health forms? Yes, Your Honor. On at least two occasions, prison officials rejected Mr. Sapp's initial appeal for failure to attach proper documentation. Now, did he go ahead and try to provide any documentation? He did, and the record includes evidence that on at least three separate occasions in response to instruction received by Defendant Kimbrell, Mr. Sapp submitted Form 7362, Health Service Request Forms, in specific response to what the defendants claimed was missing documentation. That's in the record. Evidence of a submission in July, July 20, 2002, in response to the defendants' June 30, 2000, or July 2, 2002, rejection. And the record also includes two health service request forms submitted in September of 2002 that were in response to Defendant Kimbrell's screen out on August 30, 2002. Does the record reflect that he was given medical care at any point? With respect to his eye or any? Both. The record does reflect that with respect to a skin condition that my client grieved, that, in fact, he did receive medical attention with respect to that condition. The record includes evidence that he, that Mr. Sapp, received at least one examination by an outside ophthalmologist for his eye in June of 2002. That was at the Davis School of Ophthalmology. That's correct, Dr. Chu. However, the record is silent on any follow-up to that examination. And it's evident from the health service requests that were submitted thereafter, as well as the grievances, that treatment that was not subsequently provided. So as I understand your claim, it's that the, was it the appeals coordinator? Correct. Is that what they're called? That's what they're called. Appeals coordinator. Basically thwarted his ability to exhaust. That is the claim. Is that the claim? That's the claim, correct. Okay, so what did this person do? Was it a female or male? The... The coordinator. Yeah, defending Kimbrel. The coordinator. Essentially rejected forms submitted by Mr. Sapp and gave him sort of contradictory advice. On the one hand, in June, told him you need to file these additional forms to clarify what your treatment, requested treatment is, and Mr. Sapp did that. Now, can you be more specific in the record? Sure. What are you referring to? The record at, excerpts of record 63, there is the June 30th, 2002, or rather the July 2nd, 2002 screen out by defendant, I'm sorry, that would be 62, is the July 2nd, 2002 screen out form provided by defendant Kimbrel, which says, instructs Mr. Sapp to clarify the issue. Have you been treated at SAC for, at California State Prison Sacramento for this condition? If you have not recently requested treatment, submit CDC 7362. Okay, so what was wrong with that? What was wrong with that was that the medical staff at the prison knew what his problem was, because he had been complaining about it for at least six weeks by that point. And we feel that the record includes evidence of at least three form 602s filed by this point. One on June 4th, one on June 9th, and one sometime before August 30th. Okay, so in response to this, did he submit a 7362? He did, and that is at excerpts of record 124, I believe. I'm sorry, that might not be right. It is at excerpts of record 102, my mistake. 102. Which shows that on July 20th of 2002, Mr. Sapp submitted an appropriate form to alert medical staff of his need for a follow-up to the June 18th, 2002 visit. Her response was you will be seen within the week or two weeks. Right, and the record, unfortunately, is silent on whether that follow-up actually occurred. But that would be an adequate response, would it not? It would be an adequate response to the grievance. It would not be an adequate response on behalf of CDC officials if, in fact, the follow-up was not provided. Okay, so let's assume, I gather, that it wasn't provided. That it was not provided, correct. Let's just assume that. Okay, so then what happened next? What happened next was that, and I think this is evidence that, in fact, the follow-up was not provided because Mr. Sapp filed yet another 602 appeal. On what date was that? Sometime before August 30th of 2002. All we have is the form 695 provided by Defendant Kimball, and that is on excerpt of record 68. 68. And this is the form that tells Mr. Sapp that now, in contradistinction to the earlier instruction, which was we don't know what your issue is, now tells Mr. Sapp that your appeal is untimely. So in a period of less than two months, my client was told... Go ahead. So on page 68 she says, comments, this issue has been... Screened. Screened several times. You were probably personally interviewed on 829.02 by P somebody or other. You stated this is an old issue. You appealed in 1990. Right. If you need medical treatment, submit CDC 7362. To the clinic. Correct. So we don't dispute that this is, that the triggering event that caused the injury here did occur in 1990. However, what seems improper about this response was that on July 20th of 2002, Mr. Sapp had informed medical staff that he needed, was still in need of a follow-up examination to an initial examination that he had received at UC Davis. And that, which was not quite coming. So to then instruct my client to submit yet another 7362 form seems a misuse of this, of the grievance process. At this point, the defendants knew what the problem was. My client had made every attempt to give them every bit of information that they had requested, and yet this appeal was screened out yet again with... 7362? He did, Your Honor. In fact, he submitted two of them in September of 2002. And they are also in the record. Excerpt of record 85, which is the September 9th, 2002, 7362 form. And excerpt of record 88, which is dated September 23rd, 2002. Both of which are specific with respect to his left eye needing treatment, using the phrase requested follow-up. I mean, the nature of his grievance is consistent. He keeps telling them... And what happened in response to either one of these 7362? We can presume nothing, because he, Mr. Sapp, files a grievance and his 1983 complaint. I know your time is up, but I'd like to ask one quick question. At some point, he says, look, I've only got a 7th grade education, and I really need help in filling out these forms. Did he get help at that point? The record is clear. There was no evidence that he received help. Good morning, Your Honors. May it please the Court, my name is Michelle Angus, and I'm representing the State Defendants in this action. It is undisputed that Mr. Sapp did not exhaust his administrative claims in this case. The fundamental issue in this appeal is whether the district court committed clear error in its factual findings, that Mr. Sapp did not exhaust his administrative remedies. Mr. Sapp dodges this issue, and instead he urges... Do you have a question? His record is replete with his filing forms. And that's a good question, Your Honor, and I think it takes some time to address. There are two sets of forms that are discussed throughout this appeal. There is the CDC 602, which is the inmate grievance, and then there is the CDC 7362, which is a request for medical care. The requests for medical care are legally irrelevant to whether or not he exhausted. Per Title 15, he needed to use the 602, the CDC 602, inmate grievance. Now, in this particular case, the 7362 request for medical services is important insofar that Defendant Kimbrell did repeatedly tell Mr. Sapp, it doesn't look like you have sought medical care at this prison for this issue. If you need medical care, submit a 7362, and then if you're not getting sufficient medical care, then you file a CDC 602. And by the way, that CDC 602 has to be filed within 15 days of the inadequate medical care. So these are the problems we're having. We're almost speaking past each other in talking about these two different forms. Now, there is a prison regulation that if an individual isn't really capable or competent to fill out their forms, the prison's required to help them. And he says, look, I've got a seventh grade education, I'm not somehow capable of filling out these forms, help me. So what happened? Well, sadly, all we have before us is the record. And on the record we have that he was told, your 602s are not sufficient. Clarify the issues. It isn't quite in response to his asking for help. Is there anything in the record that shows that they gave him help or said, look, you write clearly, you're doing fine? I'm trying to address your question, Your Honor. So there's two avenues in addressing your question. The first is that in response to the 602s, Defendant Kimbrell told him, your 602 is not clear enough. I don't know what the issue is here. You need to submit the 7362. Or notably, he also told him, or resubmit this 602 with additional information. And importantly, despite being told that if his 602s were being screened out incorrectly, Mr. Sapp never attempted to resubmit those 602s. He just tried to start the process all over again. Secondly, he did try, as I'm sure the Court is aware, there is an Armstrong lawsuit that has now been well incorporated into CDC's policies and procedures, and Armstrong deals with disabled inmates. And under Armstrong, an inmate's intellectual limitations can be recognized as a disability. Mr. Sapp did submit what's called a CDC 1824, Request for Reasonable Accommodation. And that is in the record, and under the record, that was denied. So he was not recognized as having a recognizable disability for his claimed limited intellectual ability. And also, I do want to point out that the Supreme Court took this issue head-on in Woodford v. Monroe when they said that they particularly pointed out that the California regulations provide a relatively simple system. And they state that the system is informal, and it's relatively simple, and prisoners have to take on much more onerous procedural requirements and deadlines in federal court than they do under the Title 15 regulations. Let me ask you a question. So under the guidelines, under the regulations, there's several levels that the inmate has to go through before they've exhausted their administrative remedies, is that correct? That's correct. Is the screener, the appeals coordinator, does she, does that person deal with the very first step? You don't even get the informal discussion, or is her involvement the informal step? Her involvement is at the formal part. So when you, after you've, and in some instances you do not have to go through the informal process. In this instance, Mr. Sapp did. So Mr. Sapp had to submit his actual 602 form, and that is when the appeals coordinator, Defendant Kimbrell became involved. So he'd already had his informal. He should have, yes. Now it's not clear if he did, because we don't even get past the screener. Now when he was denied help, were the reasons given, or was just denied? Well, that's not clear from the record, and that's part of the problem with this case. Mr. Sapp, when he submitted his 602s, and by the way, he only submitted two 602s, two grievances. The first one he submitted on June 30th of 2002, and in that one, he simply says, inadequate medical care for a critical injury that occurred in 1989. All information leading up to it is in old medical files under previous CDC number. He says he needs eyelid surgery and possibly had eye infection. There is no indication in that request that he sought medical care at any time at CSP SAC. Where's that document? Which one is that in the record? ER 63, Your Honor. ER 63. Then, and unfortunately it is not clear from the record, but at some point between July 2nd and August 29th, he resubmits a duplicate of that exact same grievance, and it gets screened out again, and this time after he was personally interviewed. So Judge Fletcher, you asked earlier if he got any help. Well, when he resubmitted that grievance a second time, they personally interviewed him, and during that personal interview, he told Defendant VanCore, who interviewed him, that it was an old issue that he had appealed in 1990. So again, he's reiterating. He had an opportunity to say, look, I sought medical care here at this institution on these dates, and they're doing nothing for me, and he didn't say that. Now, is there evidence in the record that he, his eye was injured in the prison, and that he's still having pain and trouble with it? I think that's undisputed. I think that's undisputed. I mean, clearly he believes he's still having problems with his eye. Well, why doesn't the prison give him medical care and take care of it? Well, we don't know that the prison isn't giving him medical care. The purpose of these 602s is to put the prison on notice of what the nature of the problem is. Mr. Sapp's grievances were so vague and ambiguous that essentially he would be putting Defendant Cambrell and the prison officials on a wild goose chase to go and figure out what medical care he's talking about. At CSPSAC, there are three yards. There's a separate medical clinic on each yard. There are thousands of inmates. As a practical matter, you're talking about sending a single man out, running around and trying to do all this research. It's not quite like that. It's pretty clear that he was complaining about his eye. He probably wouldn't even know what doctor he saw. I'm sorry, Your Honor. Most inmates know what doctor. He was asking to see somebody, an eye specialist, an ophthalmologist. I think he was saying he needed a referral to UC Davis. Well, the procedure for that is submit your 7362, go see a physician on the yard at the yard clinic, and then they refer you out. It's not clear that he ever did that step of going to the yard clinic. And if he did, even saying in June 2002, I went to Facility B clinic and saw the ophthalmologist. So when he submitted his request for medical, what are they called, 7362s? Yes. Do we know what happened? We do not know. You know, from this record I can understand why California prisons are under receivership. You've got a guy complaining, complaining, complaining, and you say there's nothing in the record to show what he's complaining about. You know, he's complaining about his eye, and you don't even know whether he got treated for his eye. But it's not clear that he's complaining to the right people. It's not clear that he's going to the medical staff and he's complaining to them and they're doing nothing about it. That's when the grievance process comes in. Well, then somebody should have taken him by the hand and said, this is who you need to complain to. This is what you need to say. Tell him about your eye. Nobody apparently ever did that. I disagree, Your Honor. Defendant Kimbrell told him what he needed to do. Defendant Kimbrell told him, submit your request for 7362, your request for medical care, and then timely submit a 602 if medical care is insufficient, or tell me why I am improperly screening out your grievance. And he never did that. Now, he did submit 7362, request for medical care, but it's not clear from the record whether or not he then timely submitted his 602. But do we know if he even got medical care? Does the record reflect that in response to that 7362 he was seen by a doctor? It does not, Your Honor. And clearly, Mr. Sapp in front of the district court had an opportunity to address that, and that was not addressed. It's not part of the record. Well, I thought this was screened out at the district court. No, it was not screened out. This was after the defendants had filed. Any answer? Yes, Your Honor. And one other thing I do want to note out factually, and that is Mr. Sapp tries to argue that he believed it was futile for him to continue trying to grieve these claims, and that he had no remedy available to him. Well, the record disputes that. It contradicts his claims, because on November 18th, just two weeks before he commenced this action, Mr. Sapp submitted another 602 grievance form that includes all the claims that are involved in this action. And unfortunately, we do not know what happened with that particular grievance, because he didn't give that grievance an opportunity to go through the system before filing this lawsuit. Now, where's that one in the record? That is excerpts of record 61. Okay. All right. Your time is up. Oh, thank you. Whatever dicta in Woodford characterizes the CDC system as simple is clearly contrary to the record in this case. Mr. Sapp recognized that. Not only did he request help, which was evidently denied, he filed a form under the Americans with Disabilities Act in which he said, I lack the knowledge to fill out a 602 to suit the appeals coordinator. Furthermore, he filed the reason that form 7362 are not irrelevant, as the government would have it to this case, is because they were precisely what the government asked him to do, to clarify his need for medical treatment to his eye. Furthermore, the 602 forms that were submitted specifically mentioned eyelid surgery, his need to see an ophthalmologist, the fact that medical staff was aware of his issues and that weren't doing anything about it. Mr. Sapp made repeated efforts to give CDC officials exactly what they wanted, and yet they continued to reject these efforts. And for that reason, the district court erred by dismissing his complaint. All right. On the money. Thank you very much. We appreciate the arguments in this case. The matter is submitted. Thank you.
judges: Korman, Fletcher B. , Paez